UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TOP TOBACCO, L.P., REPUBLIC TECHNOLOGIES (NA), LLC, and REPUBLIC TOBACCO, L.P., <br><br> Plaintiffs, <br><br> v. <br><br> WASSEM ABDELSHAHED and SMOKE DREAMS LLC, <br><br> Defendants. | ) ) ) ) ) ) ) NO. 3:19-cv-00356 ) ) ) ) ) ) |

# MEMORANDUM OPINION

In this case, Top Tobacco, L.P., Republic Technologies (NA), LLC, and Republic Tobacco, L.P. seek to hold Wassem Abdelshahed and Smoke Dreams LLC ("Smoke Dreams") liable for the sale of counterfeit cigarette rolling papers. On February 11, 2020, the Court granted Smoke Dreams' Rule 12(b)(2) motion to dismiss on personal jurisdiction grounds, denied Smoke Dreams' Rule 12(b)(6) motion as moot, and denied Abdelshahed's Rule 12(b)(6) motion to dismiss on the merits. (Doc. No. 34.) Plaintiffs have filed a "Motion for Partial Reconsideration and/or to Alter or Amend Judgment." (Doc. No. 36). The Court granted leave for additional discovery and supplemental briefing. (Doc. No. 40.) The motion is now ripe for consideration.

## I.    Legal Standard

Under Rule 59(e), the Court may grant a motion to alter or amend a judgment if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or a need to prevent manifest injustice. Intera Corp. v. Henderson, 428 F.3d 605, 620 (6th Cir. 2005). However, Rule 59(e) only applies to a judgment or a final order. See Keith v. Bobby, 618 F.3d 594, 597 (6th Cir. 2010) ("This court has interpreted the term 'judgment' to refer to a judgment or

a final order."). An order granting partial dismissal of a plaintiff's claims is not a final order that permits the Court to entertain a Rule 59(e) motion. See CGH Transport, Inc. v. Quebecor World, Inc., 261 F. App'x 817, 823 n.10 (6th Cir. 2008). Here, the Court's February 11, 2020, Order was not final because it left claims remaining against Abdelshahed. Accordingly, to the extent Plaintiffs bring a "motion to alter and/or amend judgment" under Rule 59(e), it is procedurally improper.

However, "[d]istrict courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." Rodriguez v. Tenn. Laborers Health & Welfare Fund, 89 F. App'x 949, 959 (6th Cir. 2004) (citing Mallory v. Eyrich, 922 F.2d 1273, 1282 (6th Cir. 1991)); see also In re Life Investors Ins. Co. of Am., 589 F.3d 319, 326 n. 6 (6th Cir. 2009) ("[A] district court may always reconsider and revise its interlocutory orders while it retains jurisdiction over the case.") (citing Rodriguez, 89 F. App'x at 959 and Mallory, 922 F.2d at 1282). Thus, district courts may "afford such relief from interlocutory orders as justice requires." Rodriguez, 89 F. App'x at 959 (internal quotation marks and brackets omitted). Courts traditionally will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct clear error or prevent manifest injustice. Louisville/Jefferson Cty. Metro Gov't v. Hotels.com, L.P., 590 F.3d 381, 389 (6th Cir. 2009) (citing Rodriguez, 89 F. App'x at 959).

**II. Analysis**

Plaintiffs first contend that new evidence supports specific personal jurisdiction. In the alternative, Plaintiffs argue that they are entitled to an inference establishing personal jurisdiction based on Smoke Dream's failure to preserve certain evidence. The first issue is dispositive: Plaintiffs have adduced sufficient evidence to support the Court's exercise of specific personal jurisdiction over Smoke Dreams.

### A. Specific Jurisdiction

Specific personal jurisdiction over a nonresident defendant exists only to the extent permitted by a state's long-arm statute and the Due Process Clause of the United States Constitution.[1] Bridgeport Music, Inc. v. Still N The Water Pub, 327 F.3d 472, 477 (6th Cir. 2003). "The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." Walden v. Fiore, 571 U.S. 277, 283 (2014) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980)). For a nonresident defendant to be subject to personal jurisdiction, he must have "certain minimum contacts [with the forum State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Id. (citations, quotation marks, and ellipsis omitted). Therefore, the Court focuses on "the relationship among the defendant, the forum, and the litigation," AlixPartners, LLP v. Brewington, 836 F.3d 543, 549 (6th Cir. 2016) (citing Walden, 571 U.S. at 283; Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985)), and employs three criteria for the exercise of specific jurisdiction:

> "First, the defendant must *purposefully avail* himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."

---

[1] Tennessee's long-arm statute permits personal jurisdiction arising from "any basis not inconsistent with the constitution of this state or the United States," Tenn. Code Ann. § 20-2-214(a)(6), and, thus, functionally serves to extend the Court's personal jurisdiction to the limits allowed by the Constitution. Intera Corp. v. Henderson, 428 F.3d 605, 616 (6th Cir. 2005). "[T]hus, the two questions become one." Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog, 954 F.2d 1174, 1176 (6th Cir. 1992) (citing Chandler v. Barclays Bank PLC, 898 F.2d 1148, 1150-51 (6th Cir. 1990)).

Id. at 549-50 (emphasis in original) (quoting Air Prods. & Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 550 (6th Cir. 2007) and S. Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374 (6th Cir. 1968)).

The Sixth Circuit has directed that "[w]hen the district court resolves a Rule 12(b)(2) motion solely on written submissions, the plaintiff's burden is "relatively slight," and "the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal[.]" AlixPartners, LLP, 836 F.3d at 549 (quoting Air Prods., 503 F.3d at 549 (citations and quotation marks omitted)). A plaintiff meets this burden by setting forth "specific facts showing that the court has jurisdiction." Serras v. First Tenn. Bank Nat. Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989) (citation and quotation marks omitted). "[T]he pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh 'the controverting assertions of the party seeking dismissal.'" Air Prods., 503 F.3d at 549 (quoting Theunissen v. Matthews, 935 F.2d 1454, 1459 (6th Cir. 1991)).

### B. The Court's February 2020 Ruling

In the February 11, 2020, Memorandum Opinion on the Motions to Dismiss, the Court found that Plaintiffs had not established that Smoke Dreams purposefully availed itself of the privilege of acting in Tennessee in a manner sufficient to allow the reasonable exercise of specific personal jurisdiction. (Doc. No. 34 at 6-11.) Of particular note, the Court declined to infer, without more, that Smoke Dreams demonstrated an intent to maintain continuing relationships and obligations in Tennessee by locating a retail store near the Tennessee border. (Id. at 9.) The Court concluded that there was insufficient evidence that Smoke Dreams engaged itself in Tennessee in relation to this dispute. (Id. at 10-11.)

### C. Discussion of Plaintiffs' New Evidence

Plaintiffs argue that new evidence satisfies the first part of the three-prong specific jurisdiction test – purposeful availment – by demonstrating that Smoke Dreams intentionally and successfully marketed its products to Tennesseans. For evaluating purposeful availment, the Sixth Circuit has adopted the "stream of commerce 'plus' approach," under which "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposely directed toward the forum State." Bridgeport Music, 327 F.3d 472, 479-80 (6th Cir. 2003). "The question is whether a defendant has followed a course of conduct directed at the society or economy within the jurisdiction of a given sovereign." J. McIntyre Mach. v. Nicastro, 564 U.S. 873, 884 (2011); Devault-Graves Agency, LLC v. Salinger, No. 2:15-cv-02178-STA, 2015 WL 6143513, at *5 (W.D. Tenn. Oct. 19, 2015). The court may consider (1) the defendant's direction or control over the flow of the product into the forum; (2) the quantity of the defendant's particular product regularly flowing into the forum; and (3) the distinctive features of the forum that connect it with the product in question. Devault-Graves, 2015 WL 6143513, at *5.

Plaintiffs primarily rely on deposition testimony from Abdelshahed, Smoke Dreams manager Fanous Kamel, and Mina Sanek, the purchaser and current operator of Smoke Dreams. Abdelshahed testified that he opened the Smoke Dreams store in Oak Grove, Kentucky because it was "very close" to the "main target" of Fort Campbell and would "attract" military business; and he intended for the store's "main customers" to come "from the base camp." (Doc. No. 67-1 at 27, 41, 81.) Although Abdelshahed knew many military personnel lived in Kentucky, he also knew part of Fort Campbell was "in Tennessee." (Id. at 27.) Furthermore, Smoke Dreams advertised a 15% "military discount" in the window of the store to attract more of those customers. (Id. at 29; Doc. Nos. 67-2 at 57, 67-3 at 37.)

5

Kamel and Sanek confirmed the strategy of attracting the business of military members stationed at "very big" Fort Campbell. (Doc. Nos. 67-2 at 57, 67-3 at 37.) Kamel testified that military personnel stationed at Fort Campbell were the primary customers at Smoke Dreams. (Doc. No. 67-2 at 52-53.) Moreover, Sadek testified that "soldiers make up a big part of [the] customer base"; "90% of the people [ ] are military and soldiers"; the soldiers either live on the base, in Oak Grove, Kentucky, or in Clarksville, Tennessee; Clarksville is much larger than Oak Grove; and the store relies on customers from Clarksville, Tennessee in addition to Oak Grove. (Doc. No. 67-3 at 37, 86, 107.) Kamel and Sanek checked drivers' licenses as part of making sales at the store, and they each saw Tennessee licenses. (Doc. Nos. 67-2 at 54, 67-3 at 87.)

The Court concludes that Plaintiffs have demonstrated purposeful availment with this new evidence that Smoke Dreams intentionally directed sales at Fort Campbell military personnel who are Tennessee residents. Smoke Dreams entirely controlled the flow of its products. Abdelshahed intentionally opened Smoke Dreams very close to Fort Campbell, and offered a military discount, to target military customers. Fort Campbell, originally called the "Kentucky-Tennessee Armor Camp," has a storied history as part of both Tennessee and Kentucky. See, e.g., U.S. Army Fort Campbell WWII History, available at https://home.army.mil/campbell/index.php/cultural-resources/history/wwii-history. Today, "Fort Campbell is a military enclave situated partly within the confines of the state of Kentucky and partly within the confines of the state of Tennessee." In re Air Crash Disaster at Gander, Newfoundland on Dec. 12, 1985, 660 F. Supp. 1202, 1207 (W.D. Ky. 1987); see also Linfoot v. McDonnell Douglas Helicopter Co., No. 3:09-cv-639, 2015 WL 1190171, at *4 (M.D. Tenn. Mar. 16, 2015) (noting that, although Fort Campbell has a Kentucky mailing address, it "straddles the border of Tennessee and Kentucky"). Indeed, sister courts have recently noted that important parts of the base are located in Tennessee, not Kentucky. See, e.g.,

6

Case 3:19-cv-00356   Document 75   Filed 09/08/20   Page 6 of 14 PageID #: 1245

Bruce v. Esper, No. 5:19-cv-00037-TBR, 2020 WL 520598, at *2 (W.D. Ky. Jan. 31, 2020) (noting that the Fort Campbell hospital and personnel office are located in Tennessee and transferring case to the Middle District of Tennessee based on improper venue); Southwinds Contracting, Inc. v. John J. Kirlin Special Projects, LLC, No. 5:16-cv-00139-TBR, 2016 WL 7031300, at *1 & n.2 (W.D. Ky. Dec. 1, 2016) (differentiating between Fort Campbell, Kentucky, and "the Tennessee side of Fort Campbell," and concluding a clinic at issue was to be constructed in "Fort Campbell, Tennessee"). Accordingly, Abdelshahed intentionally targeted military personnel who were Tennessee residents.

Furthermore, Fanous and Sanek confirmed that Abdelshahed's strategy was successful. They verified that the vast majority of Smoke Dreams customers are, indeed, military personnel who resided on-base at Fort Campbell, in Oak Grove, Kentucky, or in Clarksville, Tennessee. Although the evidence is not overwhelming, Plaintiff have made a *prima facie* demonstration that Smoke Dreams "specifically marketed its product to Tennesseans directly or indirectly," One Media IP Ltd. v. S.A.A.R. SrL, 122 F. Supp. 3d 705, 718 (M.D. Tenn. 2015). The Court may, therefore, conclude that Smoke Dreams' contacts with Tennessee are not "random, fortuitous, or attenuated, but are the result of deliberate conduct that amounts to purposeful availment." Air Prods., 503 F.3d at 551.

The remaining two elements of the test for specific jurisdiction are also satisfied. First, Plaintiffs' causes of action arise from Smoke Dreams' activities targeted at Tennessee military customers. This is a "lenient standard," id. at 553, that may be satisfied if the "defendant's contacts with the forum state are related to the operative facts of the controversy," CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1267 (6th Cir. 1996); Youn v. Track, Inc., 324 F.3d 409, 419 (6th Cir. 2003), or "lie in the wake of" the defendant's contacts. Air Prods., 503 F.3d at 553 (citing Lanier

v. Am. Bd. of Endodontics, 843 F.2d 901, 909 (6th Cir. 1988)). Here, Plaintiffs allege that Defendants have committed trademark violations by importing, offering for sale, and selling counterfeit rolling paper products. Plaintiffs produced a photograph of Smoke Dreams' interior showing jars containing alleged counterfeit TOP and JOB papers – the crux of this matter – for sale as recently as April 2019. (Doc. No. 67-1 at 61-64 and Ex. 7.) During his deposition, Abdelshahed confirmed that the photograph showed Smoke Dreams' store and several jars of TOP- and JOB-branded papers offered for sale in the store. (Id.) Plaintiffs have, therefore, sufficiently demonstrated that their causes of action are "related to" Smoke Dreams' sales targeted at military members residing in Tennessee.

Third, Plaintiffs have demonstrated that the exercise of specific personal jurisdiction is reasonable given the connection of Smoke Dreams to Tennessee. This final requirement exists because "minimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities." Air Prods, 503 F.3d at 554 (quoting Burger King, 471 U.S. at 477-78). However, "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King, 471 U.S. at 477. Moreover, where, as here, the first two criteria are met, "an inference of reasonableness arises" and "only the unusual case will not meet this third criteria." Air Prods, 503 F.3d at 554 (quoting Theunissen, 935 F.2d at 1461). Nevertheless, the Court may consider: (1) the burden on the defendant; (2) the forum state's interest; and (3) the plaintiff's interest in obtaining relief." MAG IAS Holdings, Inc. v. Schmuckle, 854 F.3d 894, 903 (6th Cir. 2017) (citing City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.,

399 F.3d 651, 666 (6th Cir. 2005) and Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113 (1987)).

Here, Smoke Dreams has not advanced any reason why the exercise of jurisdiction would be fundamentally unreasonable. "Because there is an inference of reasonableness when the first two [ ] prongs are satisfied, and because there are no considerations put forward by [Smoke Dreams] to overcome or contradict that inference, the exercise of jurisdiction is reasonable under the circumstances of this case." Air Prods., 503 F.3d at 555; see also MAG IAS Holdings, 854 F.3d at 904 ("There is not enough at this point in the litigation . . . to overcome an inference of reasonableness.").

Accordingly, the exercise of specific personal jurisdiction over Smoke Dreams is authorized by constitutional due process.[2] Smoke Dreams' Rule 12(b)(2) motion will be denied.

### III.    Smoke Dreams' Rule 12(b)(6) Motion

Because the Court exercises personal jurisdiction over Smoke Dreams, the Court must consider Smoke Dreams' partial Rule 12(b)(6) motion for failure to state a claim. (Doc. No. 22.) To survive a Rule 12(b)(6) motion, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "If the plaintiffs do not nudge their claims across the line from conceivable to plausible, their complaint must be dismissed." Lutz v. Chesapeake Appalachia, L.L.C., 717 F.3d 459, 464 (6th Cir. 2013) (internal

---

[2] Accordingly, the Court does not reach the question of whether Plaintiffs may establish specific jurisdiction by means of an inference arising from failure to preserve evidence.

citation and alterations omitted). Dismissal is likewise appropriate where the complaint, however factually detailed, fails to state a claim as a matter of law. Mitchell v. McNeil, 487 F.3d 374, 379 (6th Cir. 2007). In deciding a motion to dismiss, the court is not required to accept summary allegations, legal conclusions, or unwarranted factual inferences. Mixon v. Ohio, 193 F.3d 389, 400 (6th Cir. 1999).

Smoke Dreams seeks dismissal of Counts One, Four, Five, Six, Seven, and Eight of the Complaint. (Id. at 18-19.)

### A. Counts One and Four

Counts One and Four are Lanham Act claims alleging trademark counterfeiting, 15 U.S.C. § 1114, and importation into the United States of articles bearing an infringing mark or name, 15 U.S.C. § 1124. (Doc. No. 1.) Smoke Dreams contends these claims must be dismissed because they are solely based on conduct that occurred when the CBP intercepted counterfeit papers headed to Abdelshahed's home six months before Abdelshahed formed Smoke Dreams. (Id. at 18.)

For a federal trademark counterfeiting claim, a plaintiff must plausibly allege that: (1) the defendant infringed a registered trademark in violation of 15 U.S.C. § 1114; and (2) the defendant intentionally used the mark knowing it was a counterfeit as the term counterfeit is defined in 15 U.S.C. § 1116." Laukus v. Rio Brands, Inc., 391 F. App'x. 416, 425 (6th Cir. 2010). To satisfy the first element, a plaintiff must show "(1) that it owns a valid, protectable trademark; (2) that the defendant used the mark in commerce and without the registrant's consent; and (3) there was a likelihood of consumer confusion." Ford Motor Co. v. Heritage Mgm't Grp., Inc., 911 F. Supp. 2d 616, 621 (E.D. Tenn. 2012). For a claim under Section 1124, a trademark owner need only allege that "the defendant imported goods bearing copies of its federally registered marks." Prime Hookah, Inc. v. M.K. Distributors Inc., No. CV 20-10231-FDS, 2020 WL 3977381, at *6 (D.

10

Mass. July 14, 2020) (citing Nike, Inc. v. Eastern Ports Custom Brokers, Inc., 2018 WL 3472628, at *8 (D.N.J. July 19, 2018) (internal quotations omitted)).

Smoke Dreams' argument must be rejected for the reason explained by the Court when it denied Abdelshahed's motion to dismiss. (Doc. No. 34 at 12-13.) Smoke Dreams takes too narrow a view of the Complaint, which is not limited to the counterfeit papers seized by the CBP in January 2018. In short:

> Plaintiffs have alleged that their trademarks are valid and protectable, [Smoke Dreams] engaged in an ongoing scheme of unlawful activities involving the unauthorized use of Plaintiffs' marks in commerce through the importation and sale of counterfeit rolling papers, and this scheme was likely to result in consumer confusion, satisfying 15 U.S.C. § 1114. The alleged counterfeiting scheme includes, *but is not limited to*, the counterfeit rolling papers seized by the CBP in January of 2018. Critically, the alleged scheme *continues through the sale of the counterfeit rolling papers at the Kentucky Smoke Dreams retail store.* Plaintiffs have further alleged that [Smoke Dreams] intentionally used counterfeits as defined by law, satisfying 15 U.S.C. § 1116. Count One sufficiently pleads the elements of a trademark counterfeiting claim.

(Doc. No. 34 at 12-13 (emphasis added)). Count Four also adequately states a claim because it is based on similar allegations of a course of conduct beyond January 2018 in which *both* Abdelshad and Smoke Dreams knowingly imported counterfeit papers imitating Plaintiffs' marks. (Doc. No. 1 at 19-20.) Smoke Dreams' motion will, therefore, be denied regarding Counts One and Four.

### B. Counts Five, Six, and Seven

Smoke Dreams argues Counts Five, Six, and Seven – claims under the Tennessee Consumer Protection Act ("TCPA") and Tennessee common law – should be dismissed because they require Smoke Dreams to have acted in Tennessee, and Plaintiffs have failed to allege that Smoke Dreams took any actions in Tennessee. (Doc. No. 22 at 19.) Plaintiffs respond that they have alleged actions by Smoke Dreams directed at Tennessee or taken by Abdelshahed in Tennessee that bring Smoke Dreams within the ambit of these claims. (Doc. No. 29 at 15.)

Construing the Complaint in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs have adequately alleged actions by Abdelshahed in Tennessee that were taken, at least in part, by him as the owner of Smoke Dreams.[3] In short, Plaintiffs allege that Abdelshahed opened Smoke Dreams for the purpose of importing and selling counterfeit rolling papers, and that the two Defendants acted together in a scheme to achieve that goal. Plaintiffs have therefore plausibly alleged injury under Tennessee law. At this stage of the case, this is sufficient to allow these Counts to proceed against both Defendants.[4] Accordingly, Counts Five, Six, and Seven may proceed against Smoke Dreams.

### C. Count Eight

Finally, the parties make cursory arguments concerning Count Eight, a state common law claim for unjust enrichment. Smoke Dreams contends this claim should be dismissed because Plaintiffs' Lanham Act claims "have statutory damages and do not provide Plaintiffs a basis to be awarded damages under an unjust enrichment remedy." (Doc. No. 22 at 19.) Plaintiffs respond that the Lanham Act "does not have a preemptive effect." (Doc. No. 29 at 25.)

In Tennessee, unjust enrichment is a quasi-contractual claim by which a court may impose a contractual obligation where one does not exist. Cole v. Caruso, No. W2017-00487-COA-R3-CV, 2018 WL 1391625, at *3 (Tenn. Ct. App. Mar. 20, 2018) (citing Whitehaven Cmty. Baptist Church v. Holloway, 973 S.W.2d 592, 596 (Tenn. 1998)). The Sixth Circuit has held that certain unjust enrichment claims are preempted by the Copyright Act. See Vanderbilt Univ. v. Scholastic, Inc., 382 F. Supp. 3d 734, 766-68 (M.D. Tenn. 2019) (citing Ritchie v. Williams, 395 F.3d 283,

---

[3] Abdelshahed did not seek to dismiss these Counts on this ground.

[4] Smoke Dreams will have an opportunity, at a later stage in the case, to adduce evidence that Abdelshahed and Smoke Dreams acted independently.

289 (6th Cir. 2005) and Murray Hill Publ'ns, Inc. v. ABC Commc'ns, Inc., 264 F.3d 622, 638 (6th Cir. 2001), abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 130 (2010)). This depends on whether the material in question in copyrightable and whether a plaintiff alleges "an action based on a contract implied in law [which] requires no extra element in addition to an act of reproduction, performance, distribution or display, [or] an action based on a contract implied in fact [which] requires the extra element of a promise to pay for the use of the work." Id. at 767 (citing Wrench LLC v. Taco Bell Corp., 256 F.3d 446, 453 (6th Cir. 2001)). In Scholastic, for example, this Court concluded that because the subject matter of a Lanham Act trademark claim was also copyrightable work, an implied-in-law unjust enrichment claim was preempted by the Copyright Act. Id. at 769-70 (collecting cases).

Here, Smoke Dreams has made only the most cursory argument for preemption based on trademark claims, devoid of any citation to authority. (See Doc. No. 22 at 19.) Critically, Smoke Dreams has not argued that the trademarks at issue are also copyrightable, and the Complaint contains no such allegation. (Id.; Doc. No. 1.) It is not the role of the Court to conjure arguments for Smoke Dreams from whole cloth. See Adams v. Prunick, No. 2:08-cv-156, 2009 WL 3074366, at *1 (W.D. Mich. Sept. 23, 2009) ("It the role of the attorneys to make the arguments before the Court and it is the role of the Court to make decisions based upon those arguments."). This Court has previously concluded that Plaintiffs have adequately stated an unjust enrichment claim against Abdelshahed, who – represented by the same counsel – did not make any pre-emption argument. (Doc. Nos. 22 at 17; 34 at 19.) This claim shall proceed against Smoke Dreams as well.

**IV. Conclusion**

For these reasons, Plaintiff's Partial Motion for Reconsideration will be granted. The Court's February 11, 2020 Memorandum Opinion and Order will be vacated in part concerning

13

only the grant of Smoke Dreams' Rule 12(b)(2) Motion to Dismiss on specific personal jurisdiction grounds and the denial of Smoke Dreams' Rule 12(b)(6) Motion as moot. Smoke Dreams' Rule 12(b)(2) Motion and Rule 12(b)(6) motions will be denied. This matter will proceed against both Abdelshahed and Smoke Dreams.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE